Michael J. HUTTON, Plaintiff,

v.

GENERAL MOTORS CORPORATION, Defendant.

No. CV–N–88–657–ECR.

United States District Court, D. Nevada.

Oct. 8, 1991.

Larry Digesti, Reno, Nev., for plaintiff.

Richard W. Horton, Lionel Sawyer & Colling, Reno, Nev., for defendant.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

On July 14, 1988, plaintiff filed a complaint (document #1A) in Nevada state court against defendant and various does alleging various tort causes of action. On December 16, 1988, defendant filed a Notice of Removal (document #1) in this court, properly removing the case on the basis of diversity of citizenship and in conjunction with Congress' November 1988 amendment of 28 U.S.C. § 1441, providing that for purposes of determining diversity, doe defendants' citizenship shall be disregarded.

On November 4, 1988, before removing the case, defendant filed a Motion (document #1H) for partial summary judgment. Plaintiff filed an opposition (document #1Q) on December 12, 1988. Defendant filed a reply (document #3) on December 29, 1988, and a Supplemental Memorandum of Points and Authorities (document #17) on October 25, 1990. The motion is ripe for adjudication.

*Facts*

In April, 1969, plaintiff began working for defendant as a personnel clerk in Santa Fe Springs, California. In 1970, plaintiff received a promotion to senior personnel clerk and in 1973, was promoted to personnel investigator and transferred to Oakland, California.

Plaintiff received further promotions in 1975 and in 1979, when he became supervisor of Labor Relations, a mid-level management position. In summer, 1979, plaintiff's pregnant wife suffered a cerebral hemorrhage which rendered her permanently and totally disabled.

In October 1979, defendant closed its Oakland plant and moved its operations to Sparks. Defendant offered to transfer plaintiff to Sparks. Plaintiff alleges that defendant orally assured plaintiff that if plaintiff accepted the transfer, due to his wife's condition, he would not be transferred again. Plaintiff accepted the transfer, moved to Nevada, and began working for defendant in Sparks.

Over the next seven years, plaintiff worked for defendant in Sparks. During this period, defendant conducted an undercover investigation into drug dealings at defendant's Sparks plant. Defendant used plaintiff in this investigation, allegedly subjecting plaintiff and his family to danger.

On July 17, 1986, plaintiff allegedly was told that he could remain employed by defendant by accepting a transfer to divisional headquarters in Flint, Michigan. Plaintiff did not accept this transfer, even though, defendant alleges, plaintiff had requested transfer at an earlier date to another location in Michigan. Whether plaintiff was actually discharged or whether plaintiff actually "voluntarily resigned" is unclear. In stating the facts this way, we do not make any judgment as to whether plaintiff was constructively discharged. What is uncertain, from a factual standpoint, is whether plaintiff was fired or whether plaintiff took the initiative to terminate his employment with defendant.

Plaintiff's complaint alleges seven causes of action: (1) Express Contract; (2) Implied Contract; (3) Implied Covenant of Good Faith and Fair Dealings; (4) Intentional Infliction of Emotional Distress ("IIED"); (5) Negligent Infliction of Emotional Distress ("NIED"); (6) Defamation; (7) Punitive Damages. Defendant seeks summary judgment on all counts except (6).

*Analysis*

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975). The moving party is entitled to summary judgment as a matter of law where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute. Fed. R.Civ.P. 56(c); *Semegen v. Weidner*, 780 F.2d 727 (9th Cir.1985). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141 (9th Cir.1983).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon the mere allegations or denials of his pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson, supra.* As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248, 106 S.Ct. at 2510. Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex, supra.*

Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id.* When faced with a motion for summary judgment, the material before the court "must be viewed in the light most favorable to the [non-moving] party," *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proven under the allegations of the complaint. *Halet v. Wend Investment Co.,* 672 F.2d 1305 (9th Cir.1982).

To its motion for summary judgment, defendant attached four exhibits.

Exhibit 1 is a transcript of plaintiff's deposition from August 28, 1985. This deposition comes from a case brought by another person against defendant, called *Norman v. General Motors.* Exhibit 2 is a transcript of plaintiff's testimony given November 25, 1986, in the trial of *Norman v. General Motors.* Exhibit 3 is a transcript of plaintiff's testimony given December 1, 1986, in the trial of *Norman v. General Motors.* Exhibit 4 is an affidavit of the Area Personnel Director of defendant.

In his opposition, plaintiff asserts that defendant may not use Exhibits 1–3 in this case because of an agreement between plaintiff and defendant entered November 13, 1986 (Exhibit 1 of document #1Q). The November 13, 1986 agreement provides that if plaintiff assists defendant in defending the suit by Norman against defendant:

> 5) It is further agreed that any statement or disclosures made by the contractor (plaintiff), during the performance of this Agreement, shall not be used in any proceedings which may arise between them.

In response, defendant asserts that this agreement is not binding. We agree with defendant that interpreting and giving any effect, if at all, to this provision is a matter for the court.

First, defendant argues that we should consider the exhibits because they are "highly damaging" to plaintiff. We are unpersuaded that such a fact merits our consideration of the exhibits. First, defendant offers no authority for its assertion.

Second, and more importantly, however, most, if not all, confidentiality agreements will contain highly damaging facts. In fact, the purpose of a confidentiality agreement is to prevent the party for whose benefit such information is given, to use the information against the informer. Defendant's argument, carried one step further, implies that Oliver North's grant of immunity for testifying before Congress should have been ignored because the testimony he gave was self incriminating.

■ Defendant cites *Grumman Aerospace Corp. v. Titanium Metals Corp. of America*, 91 F.R.D. 84 (E.D.N.Y.1981) as support for its assertion that confidentiality agreements are invalid absent court approval. The Ninth Circuit, however, has indirectly addressed the validity of confidentiality agreements. In *United States v. Wellins*, 654 F.2d 550 (9th Cir.1981), defendant attempted to exclude statements elicited from him by plaintiff on the grounds that defendant gave such statements pursuant to a confidentiality agreement. The court held:

> Wellins also attempted to justify exclusion of material obtained ... based on a purported confidentiality agreement reached with the Government. The record is clear that such agreement occurred after Wellins was taken from the hotel and that evidence obtained prior to leaving the hotel is not, therefore, subject to suppression because of that agreement.

*Id.* at 554 n. 3. Thus, while the court refused to apply the agreement, it did so not because the agreement was unenforceable, but because the statements provided occurred before the parties entered the agreement. Consequently, the court implicitly found that confidentiality agreements are valid.

Further, in *Matter of Wellins*, 627 F.2d 969 (9th Cir.1980), the court found that in general, confidentiality agreements are enforceable. *See, e.g., Id.* at 971; *United States v. Brooklier*, 685 F.2d 1208, 1217 (9th Cir.1982) ("Statements made in confidence are not immune absent an unconditional promise of confidentiality ... The district court found that there was no binding agreement"). In our case, defendant made an unconditional promise of confidentiality. A binding agreement did exist because defendant did not challenge the validity of the agreement from a contracts law standpoint. Consequently, defendant's argument that we must reject the confidentiality agreement fails.

Defendant also argues that only confidential discussions between plaintiff and defendant were covered by the agreement. We disagree. The plain language of the provision quoted above indicates that the agreement covers any statement or disclosure made by plaintiff during the performance of the agreement. None of the language in the provision limits coverage to statements and disclosures made by plaintiff to defendant.

■ Finally, defendant concedes that plaintiff testified at trial after the parties entered the agreement. Defendant argues, however, that even if we do not consider plaintiff's trial testimony (Exhibits 2 and 3), we may consider plaintiff's deposition testimony (Exhibit 1) because plaintiff was deposed before the parties entered the agreement. This argument has merit.

Nothing in the agreement states or even implies that such agreement shall apply retroactively. Further, much of the language in the agreement refers to plaintiff's duty to attend and participate in the trial. That is, no mention is made of depositions. Finally, defendant promised to pay plaintiff a daily fee during the performance of the agreement. The agreement, however, does not state that plaintiff will be paid for the days he already spent helping defendant.

Consequently, we will consider the deposition testimony of plaintiff since plaintiff was deposed before the parties entered the agreement. We will not, however, consider the trial testimony of plaintiff because plaintiff testified after the parties entered the agreement. We proceed to the merits of each count.

*Count 1—Express Contract*

Count 1 of plaintiff's complaint is entitled Express Contract. The paragraphs in this count, however, do not state a claim for breach of contract, nor do they even allege a provision between plaintiff and defendant providing that plaintiff cannot be transferred out of Sparks. Plaintiff asserts that defendant "wrongfully attempted" to transfer plaintiff to Michigan, but does not allege that this attempt breached an express contract. This allegation appears to be an attempt to plead a tort action, not a contract action.

■ Plaintiff states in count 1 that defendant constructively and wrongfully discharged him. Construing this count in the light most favorable to plaintiff, we will assume that plaintiff alleges that a contract exists between plaintiff and defendant under which defendant could not transfer plaintiff out of Sparks.

Plaintiff has the burden of proving such a contract between plaintiff and defendant. Defendant points to plaintiff's deposition testimony, in which plaintiff stated that he did not have an employment contract with defendant. Defendant argues that this evidence is dispositive on whether plaintiff had an employment contract with defendant. We disagree. The relevant inquiry is the intent of the parties at the time plaintiff began his employment. Thus, plaintiff's statements do not preclude him from proving a contract.

■ Nonetheless, not only must plaintiff show that a contract existed, but that under such contract, he could not be transferred out of Sparks. Necessarily, this provision would have to arise at the time plaintiff was transferred from Oakland to Sparks. If such a provision exists, then the breach of such a provision would amount to a wrongful and constructive discharge.

Plaintiff bases his argument that a contract existed on the premise that employee and policy manuals of defendant were part of the employment contract. Plaintiff, however, does not allege that such manuals contain prohibitions of transfer. In his affidavit, plaintiff cites the relevant manuals, but does not state how they created a contract between plaintiff and defendant prohibiting transfers. Further, plaintiff did not attach such manuals to his opposition. Therefore, we have no evidence that such a provision existed. Consequently, plaintiff's argument that the policy manuals ensured plaintiff's avoidance of a transfer must fail because plaintiff has not submitted evidence showing a genuine issue of material fact.

■ Plaintiff also asserts, in his affidavit, that when he was transferred from Oakland to Sparks, he received "oral assurances" that he subsequently would not be transferred out of Sparks. Plaintiff states that he accepted the transfer to Sparks because of these oral promises. Plaintiff argues that the breach occurred when defendant forced plaintiff to transfer to Michigan or lose his job. Plaintiff does not state whether, factually, he resigned or was terminated. He states that he separated from his employment. In either case, if plaintiff's allegations are true, he has presented a triable issue as to wrongful discharge based upon an oral contract.

The key inquiry is whether defendant promised plaintiff that plaintiff would not be transferred out of Sparks. Going back to plaintiff's deposition testimony, plaintiff stated that he did not have an employment contract with defendant. Such statement, however, does not address whether defendant made the oral assurances outlined above. Thus, the only question is whether defendant's agent made such oral assurances to plaintiff.

■ Defendant does not dispute that such assurances were made. Nonetheless, some contracts must be in writing. In this case, the only argument that the alleged contract must comply with the Statute of Frauds, is that the alleged provision of no transfers cannot be performed within one year. Since we have this case on diversity, we look to state law to determine whether the contract must be in writing.

In this case, the parties allegedly entered the contract in Oakland, California. Cal. Civ.Code § 1624(a) (West Supp.1991) provides that "An agreement that by its terms is not to be performed within a year from the making thereof" must be in writing. If a contract can be performed within one year, the contract need not be in writing.

In this case, defendant allegedly promised not to transfer plaintiff out of Sparks if plaintiff accepted the transfer to Sparks. Once plaintiff accepted the transfer, he completed his performance. Defendant, however, could not complete performance as long as plaintiff was employed by defendant in Sparks. We must determine whether plaintiff could have completed his

employment with defendant within one year. The answer, of course, is certainly. For example, plaintiff could have resigned his employment within one year of accepting the transfer to Sparks. Thus, § 1624(a) does not apply and the contract plaintiff alleges exists need not comply with the Statute of Frauds.

On this basis, only the trier of fact can determine whether defendant's agent promised plaintiff that if plaintiff accepted the transfer from Oakland to Sparks, defendant subsequently could not transfer plaintiff out of Sparks. Thus, defendant is not entitled to summary judgment on the alleged express oral contract. Defendant is entitled, however, to summary judgment on the alleged express written contract which supposedly arose from defendant's employee and policy manuals. Consequently, at trial, the only express contract plaintiff may prove is the oral contract.

If plaintiff can prove such a contract, he will be entitled to relief if the finder of fact also finds that defendant forced plaintiff to take the transfer or lose his job. Of course, if such a contract did not exist, defendant was entitled to force plaintiff to take the transfer or lose his job, only because plaintiff has not presented sufficient evidence here that an express contract other than the alleged oral contract existed.

Since plaintiff has not offered evidence or argument in support of his argument that he was not an "at-will" employee, except for the allegation that defendant promised plaintiff that he would not be transferred out of Sparks, we conclude that the only manner in which plaintiff can prove at trial that he was not an "at-will" employee is by proving the oral contract he alleges. That is, the only limit on defendant from discharging plaintiff, aside from illegal purposes, which plaintiff does not allege, is if defendant promised plaintiff that he would not be transferred out of Sparks.

### Count 2—Implied Contract

██ Under Cal.Civ.Code § 1621 (West 1985), "An implied contract is one, the existence and terms of which are manifested by conduct." In this situation, as stated above, the only evidence plaintiff has presented indicating that defendant promised not to transfer plaintiff out of Sparks if he accepted the transfer to Sparks is the alleged oral contract. Plaintiff argues that an employment contract existed between plaintiff and defendant, but does not allege or offer evidence that, other than such oral assurances, defendant promised not to transfer plaintiff out of Sparks.

Specifically, plaintiff does not point to any conduct that defendant exhibited giving rise to a contract under which defendant could not transfer plaintiff out of Sparks. Further, while plaintiff's complaint states that defendant expressed to its employees the importance of continued employment, etc., plaintiff has not offered any evidence that the employee policy and manuals created an implied contract under which defendant could not transfer plaintiff out of Sparks. Consequently, defendant is entitled to summary judgment on count 2, Implied Contract.

### Count 3—Implied Covenant of Good Faith and Fair Dealing

██ In his third claim for relief, plaintiff states that defendant breached its duty of good faith and fair dealing by wrongfully forcing plaintiff to transfer to Michigan or lose his job, in violation of defendant's employee handbook. Plaintiff also asserts that defendant, in bad faith, attempted to force out plaintiff, when plaintiff had cooperated with defendant to infiltrate a drug ring, placing plaintiff and his family in great physical danger.

██ Under Nevada law, every contract contains an implied covenant of good faith and fair dealing. *K Mart Corp. v. Ponsock*, 103 Nev. 39, 732 P.2d 1364, 1370 (1987). In this case, plaintiff's complaint indicates that defendant's breach of the covenant occurred when defendant allegedly forced plaintiff to transfer to Michigan or lose his job, in violation of a contract between plaintiff and defendant.

As we have stated, the only basis on which a contract might exist in this case is the alleged oral promise from defendant that if plaintiff accepted the transfer to

Sparks, he would not be transferred out of Sparks. In *United Fire Ins. Co. v. McClelland*, 105 Nev. 504, 780 P.2d 193 (1989), the Nevada Supreme Court held:

> Liability for bad faith is strictly tied to the implied-in-law covenant of good faith and fair dealing arising out of an underlying contractual relationship.... When no contractual relationship exists, no recovery for bad faith is allowed.

*Id.* 780 P.2d at 197. Thus, the only chance plaintiff has of recovering for breach of the implied covenant is if the finder of fact finds first that the alleged oral contract existed. That is, the only possible basis for this claim is if the finder of fact believes that defendant made the alleged promise to plaintiff.

This does not end the inquiry. In *American Bank Stationery v. Farmer*, 106 Nev. 698, 799 P.2d 1100 (1990), the Nevada Supreme Court considered the difference between "at-will" employees and "tenured" employees. The Court held:

> We note that all employees in Nevada are presumed to be at-will employees. An employee may rebut this presumption by proving ... that there was an express or implied contract between his employer and himself that his employer would fire him only for cause.

*Id.*, 799 P.2d at 1101–1102. In our case, based on the evidence before us, the only evidence that plaintiff was "tenured" was the alleged oral contract. In *American Bank*, the oral contract was a promise that the employee would be fired only for cause. A firing in any other manner presumably would be wrongful. In our case, the promise was that plaintiff would not be transferred out of Sparks. Thus, if accepting a transfer out of Sparks was a condition of continued employment, defendant could be liable for wrongful discharge.

In *K–Mart, supra,* the Nevada Supreme Court held that in certain circumstances, where contract damages would be insufficient, the plaintiff could state a cause of action for wrongful discharge under the implied covenant of good faith and fair dealing. The Court held:

> [W]e now recognize a bad faith discharge case in this fact-specific instance of discharge by a large, nationwide employer of an employee in bad faith for the improper motive of defeating contractual retirement benefits.

*Id.*, 732 P.2d at 1370. In our case, General Motors is a large, nationwide employer. Further, just as the retirement benefits of plaintiff in *K–Mart* arose because of a contract, the benefit of plaintiff in our case of not facing transfer out of Sparks arose because of a contract.

The Court continued, holding that a mere breach of a contract is not sufficient to give rise to tort damages. *Id.* Rather, tort remedies are appropriate when the defendant's "conduct goes well beyond the bounds of ordinary liability for breach of contract." *Id.* The Court then attempted to define the elements necessary to meet the "well beyond the bounds" test.

> The kind of breach of duty that brings into play the bad faith tort arises only when there are special relationships between the tort-victim and the tortfeasor....

*Id.* For such a relationship to exists, there must be an element of reliance on the part of the victim arising because of a "superior-inferior power differential." *Id.*, 732 P.2d at 1371. The Court concluded that in the employer-employee relationship, such a differential exists. *Id.* at 1372.

On the other hand, the Court instructed that one also must consider whether contract damages would hold the employer accountable for the specific type of misconduct and whether contract damages could make the aggrieved employee whole. *Id.*, 732 P.2d at 1371. The Court found that in *K–Mart*, contract damages alone would render the employer totally unaccountable for its conduct:

> After involving itself in a relationship of trust and special reliance between itself and its employee and allowing the employee to rely and depend on continued employment and retirement benefits, the company, to serve its own financial ends, wrongfully and in bad faith, breached the employment agreement.

*Id.,* 732 P.2d at 1372. In our case, in accepting the transfer to Sparks, plaintiff specifically relied on the assurance that he would not be transferred out of Sparks. Defendant did not offer any good faith motive for forcing plaintiff to transfer or lose his job. Thus, we conclude that defendant is not entitled to summary judgment on this claim. We note with emphasis, however, that plaintiff's claim for breach of the implied covenant is wholly dependent on a finding by the fact finder that the oral contract plaintiff alleges exists, does in fact exist. If the finder of fact finds that such an oral promise was never made, defendant will be entitled to a directed verdict on this claim. If such a contract did exist, the finder of fact must determine whether plaintiff is entitled to tort damages, as well as contract damages.

*Count 4—Intentional Infliction of Emotional Distress (IIED)*

■ In *Branda v. Sanford,* 97 Nev. 643, 648, 637 P.2d 1223 (1981) and *Star v. Rabello,* 97 Nev. 124, 125, 625 P.2d 90 (1981), the Nevada Supreme Court recognized the tort of intentional infliction of emotional distress ("IIED"), or "Outrage," and set out its elements. To recover for IIED, a plaintiff must show (1) extreme and outrageous conduct by defendant; (2) defendant's intent to cause emotional distress or reckless disregard as to the probability of emotional distress; (3) plaintiff's severe emotional distress; (4) actual and proximate causation between defendant's conduct and plaintiff's emotional distress.

■ In his opposition, plaintiff states, "questions of fact remain whether GM *negligently* inflicted severe emotional distress by attempting to transfer plaintiff exposing his family to known threats of death and violence." Thus, it appears that plaintiff is not arguing the IIED cause of action. Nonetheless, we will address the claim.

As to the first two elements, given defendant's knowledge of the medical condition of plaintiff's wife and of the events plaintiff had gone through in relation to the drug investigation, we conclude that a find-er of fact reasonably could determine that defendant's conduct was extreme and outrageous, with the intent to cause severe emotional distress or with reckless disregard as to the probability of emotional distress. Plaintiff however, has not presented any evidence other than the allegation in his complaint, which is insufficient on a motion for summary judgment, that he suffered severe emotional distress as a result of his termination. Consequently, defendant is entitled to summary judgment on IIED.

*Count 5—Negligent Infliction of Emotional Distress (NIED)*

■ Defendant also seeks summary judgment on plaintiffs' claim of NIED on the grounds that Nevada does not recognize a cause of action for NIED in this situation. "It appears that unless the plaintiff is a witness to defendant inflicting injury on a close relative of the plaintiff, and suffers physical injury as a result of the incident, plaintiff may not recover." *Etchart v. Bank One,* 773 F.Supp. 239, 244 (D.Nev. 3/15/91).

In this case plaintiff is not a bystander plaintiff, but a "direct victim" plaintiff, for which Nevada may not recognize an NIED cause of action. Further, no evidence exists indicating that plaintiff suffered a physical injury as a result of defendant's alleged negligent infliction of emotional distress.

Plaintiff apparently has abandoned the claim, as evidenced by his opposition, in which he does not discuss NIED. Nonetheless, we will address the issue. Nevada does not expressly recognize a cause of action for NIED on the facts of this case. On the other hand, Nevada has not rejected such a claim. We have previously determined that the Nevada Supreme Court would not recognize such an action. *Id.* We will, however, adapt our analysis from *Etchart* to the facts of this case.

Unfortunately, the Court has never squarely addressed whether a "direct victim" of defendant's wrongful conduct can sue defendant for damages resulting from severe emotional distress, in the absence of physical injuries. However, the Court has

encountered cases where plaintiff has asserted the right to recover under an NIED type theory.

In *Star v. Rabello*, 97 Nev. 124, 625 P.2d 90 (1981), plaintiff alleged intentional infliction of emotional distress. The Court recognized a cause of action where plaintiff suffers emotional distress from witnessing the outrageous conduct of defendant cause injury to a close relative of plaintiff. In such a case, the Court held that plaintiff must show the defendant's conduct was violent and shocking. While the Court did not call this cause of action NIED, *Star* was the Nevada Supreme Court's first acknowledgement of an NIED type claim.

In *Nelson v. City of Las Vegas*, 99 Nev. 548, 665 P.2d 1141 (1983), the Nevada Supreme Court again encountered an NIED type situation. The Court held that a witness to a close relative being injured by defendant's outrageous conduct may recover from defendant for emotional distress if the witness suffers physical injury or illness as a result of the emotional distress. *Id.* at 555, 665 P.2d 1141. The Court noted the less extreme the outrage, the more appropriate it is to require evidence of physical injury. *Id.* Once again, the Court did not call this cause of action NIED. In any case, plaintiff in our case has not alleged physical injury.

In *Smith v. Clough*, 106 Nev. 568, 796 P.2d 592 (1990), the Nevada Supreme Court came closest to deciding whether a "direct victim" asserting NIED states a cause of action. In *Smith*, plaintiffs were gardening in their backyard and heard a loud crash from the front of their house. Upon examining the situation, they noticed that defendant, who had been drag racing, crashed her car into plaintiffs' home, causing extensive damage. Plaintiffs sued for NIED, claiming they were direct victims of defendant's negligence, and suffered severe emotional distress as a result of such negligence.

In finding for defendant as a matter of law, the Nevada Supreme Court held:

"We reject the [plaintiffs'] contention and decline the invitation to follow certain case law from other jurisdictions which they claim is in their favor ... We believe the better rule is to allow recovery only in cases which pertain to emotional distress arising from harm to another person ..."

*Id.*, 796 P.2d at 593. The Court made this statement in addressing whether a plaintiff should recover for NIED when the emotional distress arises from defendant's harm to property. However, the Court acknowledged that the only NIED law in Nevada relates to the bystander situation. *Id.* This language indicates that the Nevada Supreme Court would not extend NIED beyond the bystander situation.

Also lending support to the argument against allowing plaintiffs to state a cause of action for NIED is plaintiffs' lack of physical injury. In *Payton v. Abbott Labs*, 386 Mass. 540, 437 N.E.2d 171 (1982), plaintiffs' mothers had ingested DES during pregnancy. Plaintiffs sought damages for emotional distress arising from the likelihood that they would have problems with their reproductive organs. No problems had yet manifested themselves, but plaintiffs had incurred costs and suffered traumatic experiences in being tested for various problems.

Plaintiffs asserted that defendants were negligent in marketing DES without testing it or putting a warning label on it. Plaintiffs alleged that defendants' negligence caused plaintiffs' emotional distress. Thus, this is a "direct victim" case, similar to the facts of our case. The Court held that to recover for NIED, the plaintiffs had to show evidence of physical harm resulting from the condition which caused the emotional distress. Since plaintiffs had not yet suffered physical harm, they lost.

Similarly, W. Prosser, W. Keeton, D. Dobbs, R. Keeton, D. Owen, Prosser and Keeton on Torts, Ch. 9, § 54, at 362 (5th ed. 1984) notes that in the direct victim scenario, a cause of action for NIED when no physical injury exists has been recognized in the following instances only: negligently transmitting a message over a wire regarding someone's death, negligently mishandling a corpse, negligently embalming a body, negligently shipping cargo, and negli-

gently running over a body. No jurisdiction recognizes a cause of action for NIED in our fact scenario.

In our case, plaintiffs have not alleged physical harm resulting from defendant's alleged negligent conduct. Thus, under unanimous authority, they cannot state a cause of action for NIED. We conclude that in light of the Nevada case law on NIED and general case law on NIED, the Nevada Supreme Court would not recognize a cause of action for NIED in this situation.

*Count 7—Punitive Damages*

■ Since plaintiff has survived defendant's motion for summary judgment on at least one tort claim, plaintiff may be entitled to punitive damages. If the finder of fact believes that defendant is liable on Count 3, the finder of fact may award punitive damages if it believes that defendant acted with oppression, fraud or malice, express or implied. *See* Nev.Rev.Stat. Ann. § 42.005. This is ultimately a question for the finder of fact. Thus, defendant is not entitled to summary judgment on punitive damages.

IT IS, THEREFORE, HEREBY ORDERED that defendant's motion for partial summary judgment (document # 1H) is GRANTED as to the following counts: Count 2 (Implied Contract), Count 4 (Intentional Infliction of Emotional Distress), and Count 5 (Negligent Infliction of Emotional Distress). Defendant's motion for partial summary judgment (document # 1H) is DENIED as to counts: Count 1 (Express Contract), Count 3 (Implied Covenant of Good Faith and Fair Dealing), and Count 7 (Punitive Damages).