UNITED STATES of America

v.

Carmine PERSICO, a/k/a "The Snake," a/k/a "Junior," Gennaro Langella, a/k/a "Gerry Lang," Thomas Dibella, a/k/a "The Old Man," Alphonse Persico, a/k/a "Little Allie Boy," Dominic Montemarano, a/k/a "Donny Shacks," John J. Deross, a/k/a "Jackie," Frank Melli, a/k/a "Beansie," Anthony Scarpati, a/k/a "Scappy," Andrew Russo, a/k/a "Andy Mush," Dominic Cataldo, a/k/a "Little Dom," Frank Falanga, a/k/a "Frankie The Beast," Hugh McIntosh, a/k/a "Apples," Vito Pitta and Ralph Scopo, Defendants.

No. S 84 Cr. 809 (JFK).

United States District Court,
S.D. New York.

July 23, 1985.

Rudolph W. Giuliani, U.S. Atty. for the S.D. of N.Y., New York City, for the U.S.; Bruce A. Baird, Aaron R. Marcu, Frank H. Sherman, Asst. U.S. Attys., New York City, of counsel.

Frank A. Lopez, Brooklyn, N.Y., for defendant Carmine Persico.

Santangelo & Cohen, for defendant Andrew Russo; George L. Santangelo, New York City, of counsel.

Michael F. Coiro, Jr., Bellmore, N.Y., for defendant Dominic Cataldo.

Genovesi & Kellman, for defendant Hugh McIntosh; Susan G. Kellman, Brooklyn, N.Y., of counsel.

## OPINION and ORDER

KEENAN, District Judge:

Defendants Carmine Persico, Andrew Russo, Dominic Cataldo and Hugh McIntosh move this Court for an order dismissing the charges against them, brought pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 ("RICO"), on the ground that the use of a prior conviction as a predicate act for a subsequent RICO prosecution violates (i) the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution; (ii) the plea agreements underlying their prior convictions;[1] and (iii) Rule 11(c)(1) of the Federal Rules of Criminal Procedure, which requires a court, upon

---

1. The Court has established, should defendants' other motions to dismiss the indictment not be granted, that September 30, 1985 will be the date for commencement of the trial. However, rulings on motions to dismiss based on asserted violations of the Double Jeopardy Clause or breach of a plea agreement are, in contrast to all the other pretrial motions made in this case, appealable before trial. *Abney v. United States,* 431 U.S. 651, 656–62, 97 S.Ct. 2034, 2038–41, 52 L.Ed.2d 651 (1977); *United States v. Abbamonte,* 759 F.2d 1065, 1070–72 (2d Cir.1985). The Court notes that (i) defendant Dominic Montemarano is currently in custody under the pending indictment, and (ii) it is our understanding that government witnesses are being sequestered before trial. In view of these considerations, and the right of all the defendants and the public to a speedy trial, the Court hopes to commence this trial on September 30, 1985, the date fixed. Therefore, those issues subject to interlocutory appeal are being addressed in advance of the other issues raised in defendants' pretrial motions. Should an appeal from this order be taken, the Court will then determine whether it retains jurisdiction to go forward with this case.

acceptance of a guilty plea, to inform the defendant of the consequences of his plea.

For the reasons stated below, defendants' motion is denied.

## BACKGROUND

The four movants, together with their 10 co-defendants, are alleged to be members of the Colombo Family of La Cosa Nostra ("Colombo Family"). The Colombo Family is alleged to be a criminal enterprise that systematically engaged in a wide-range of criminal activities including payoffs, embezzlement and extortion in connection with its control and domination of local labor unions; theft and sale of stolen goods; loansharking; illegal distribution of narcotics; operation of an illegal gambling business; bribery of public officials; and, intimidation by threats, beatings and murder. Counts one and two of the 51-count indictment, which constitute the heart of the government's case, charge all fourteen defendants with substantive violations of, and conspiracy to violate, RICO, 18 U.S.C. § 1962(c) and (d).

To establish a RICO violation, the government must show "a pattern of racketeering activity," id. § 1962(c), defined as "at least two acts of racketeering" within a ten-year period, id. § 1961(5), undertaken as part of a criminal enterprise, id. § 1962(c). To that end, the government has enumerated 56 racketeering acts as the predicate offenses for its RICO charges.

Racketeering acts 36–43 involve the bribery of a Special Agent of the Internal Revenue Service ("IRS"), in violation of 18 U.S.C. § 201(b)(3). All four movants have pleaded guilty to some part of this offense in the United States District Court for the Eastern District of New York. This affair has come to be known as the "Annicharico" bribery scheme, named after the IRS Special Agent at the hub of the conspiracy.

Defendants Carmine Persico, Russo and McIntosh bribed Annicharico to use his official position to prevent the commencement of the federal criminal prosecutions of Charles Panarella and defendant Russo

for violations of federal income tax laws. (Racketeering Acts 36–37). Defendant Carmine Persico also bribed Annicharico to issue a writ of *habeas corpus ad testificandum* directing that Persico, then incarcerated in Atlanta, Georgia, be transferred to the federal prison in New York City. (Racketeering Act 38). Defendants Carmine Persico and McIntosh bribed Annicharico to arrange for Persico to remain incarcerated in New York City, rather than being returned to Atlanta. (Racketeering Act 39). Defendants Carmine Persico, Russo and McIntosh bribed Annicharico to influence the disposition of Persico's application to vacate his sentence. (Racketeering Act 40). Defendant Russo bribed Annicharico to prevent the commencement of a state criminal prosecution against Marc Rosenberg for perjury in a grand jury proceeding and to eliminate any back income tax liability for Stephen Lo Mangino and Adak Carting, Inc. (Racketeering Acts 41 and 43). Finally, defendants Russo and Cataldo bribed Annicharico to prevent the commencement of a federal criminal prosecution against Cataldo for alleged violations of the federal income tax laws. (Racketeering Act 42).

On August 11, 1981, Carmine Persico pleaded guilty to conspiracy to bribe a public official, 18 U.S.C. § 371, under the first count of an Eastern District of New York indictment (81 Cr. 42). Those charges are virtually restated by racketeering acts 36–39. On April 26, 1982, Andrew Russo pleaded guilty to conspiracy to bribe a public official, id. § 371, and obstruction of justice, id. § 1505, under counts one and four of an Eastern District indictment (80 Cr. 596). Those charges are substantially restated by racketeering acts 36–37 and 40–43. On or about March 5, 1981, Dominic Cataldo pleaded guilty to conspiring to bribe a public official and obstruction of justice, id. § 371, under count three of an Eastern District of New York indictment (81 Cr. 24). Those charges are virtually identical to racketeering act 42. On November 1, 1982, Hugh McIntosh, after four days of his trial, pleaded guilty to bribery of a public official, id. § 201(b), under

count three of an Eastern District indictment (80 Cr. 596). Those charges are substantially identical to racketeering acts 36–37 and 39–40. Several charges against each of the above-named defendants were dismissed on the government's motion subsequent to their pleas of guilty.

The Court notes that, with the exception of defendant McIntosh, the pending indictment charges each of the movants with at least one racketeering act independent of the bribery of Special Agent Annicharico. Defendant Carmine Persico, the reputed boss of the Colombo Family, is also charged with (i) conspiracy to extort payoffs from construction companies, *id.* § 1951 (Racketeering Act 1); and (ii) bribery of an official at the Federal Correctional Institution in Ashland, Kentucky to induce the official to grant unwarranted privileges to inmate Persico, *id.* §§ 201(b)(1) and (3), 201(f) (Racketeering Act 44). Defendant Russo, a reputed "Capo" of the Colombo Family, is charged with participation in a wide-ranging loansharking conspiracy spanning from 1968 to the date of indictment; *id.* §§ 891, 892, 894 (Racketeering Act 47), and separate counts of conspiracy to make extortionate extensions of credit, *id.* §§ 891 and 894 (count 37), and conspiracy to use extortionate means for the collection of extensions of credit, *id.* §§ 891 and 894 (count 43). Defendant Cataldo, a reputed associate of the Colombo Family, is charged with (i) bribery of a prison official to obtain for himself an unwarranted institutional classification and a reduction of his term of incarceration, *id.* § 201(b)(2) (Racketeering Act 46); and (ii) wide-ranging narcotics violations, 21 U.S. §§ 812, 841(a)(1), 841(b)(1)(A), and 846 (Racketeering Act 56).

As regards defendants Carmine Persico and Cataldo, who are charged with a sufficient number of racketeering acts, independent of the Annicharico scheme, to sustain a RICO charge, the validity of using prior convictions as predicate offenses for a subsequent RICO charge affects only the weight of evidence against them. Defendant Russo is charged with only one racketeering act, other than those he pleaded

guilty to in 1982; thus, the validity of the RICO charges against him depend on whether the Annicharico bribery conviction may constitute the one additional predicate offense necessary to support a RICO charge. Defendant McIntosh is charged only with racketeering acts arising from the Annicharico bribery offenses to which he has already pleaded guilty or were dismissed pursuant to his plea agreement. As a result, the validity of the RICO charges against him depend on whether the bribery conviction and dismissed charges arising from the same scheme may constitute the necessary predicate offenses necessary to support a RICO charge.

## DISCUSSION

### A. *Double Jeopardy*

█ The Double Jeopardy Clause of the Fifth Amendment declares: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life and limb...." U.S. Const., Amend. 5. The Double Jeopardy Clause consists of three separate constitutional protections: (1) second prosecution for the same offense after acquittal, (2) second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). The second and third protections are most relevant to this case.

These two constitutional proscriptions serve primarily to preserve the finality of judgments in criminal prosecutions and to protect the defendant from prosecutorial overreaching. *Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 2540–41, 81 L.Ed.2d 425 (1984); *United States v. DiFrancesco,* 449 U.S. 117, 128, 136, 101 S.Ct. 426, 432, 437, 66 L.Ed.2d 328 (1980). In *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199 (1957), the Supreme Court explained:

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should

not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity....

*Accord Johnson,* 104 S.Ct. at 2540–41.

The finality guaranteed by the Double Jeopardy Clause, however, is not absolute; it must accommodate the societal interest in prosecuting and convicting those who violate the law. *Garrett v. United States,* — U.S. —, 105 S.Ct. 2407, 2420, 85 L.Ed.2d 764 (1985) (O'Connor, J., concurring); *Tibbs v. Florida,* 457 U.S. 31, 40, 102 S.Ct. 2211, 2217, 72 L.Ed.2d 652 (1982); *United States v. Tateo,* 377 U.S. 463, 466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964); *see, e.g., Tibbs,* 457 U.S. at 40, 102 S.Ct. at 2217 (defendant who successfully appeals a conviction is generally subject to retrial); *Illinois v. Somerville,* 410 U.S. 458, 468–71, 93 S.Ct. 1066, 1072–74, 35 L.Ed.2d 425 (1973) (defendant subject to retrial after mistrial declared for "manifest necessity"); *United States v. Kwang Fu Peng,* 766 F.2d 82, 85 (2d Cir.1985) (same). Thus, while the Double Jeopardy Clause is designed to curtail government oppression, it "does not relieve a defendant from the consequences of his voluntary choice." *United States v. Scott,* 437 U.S. 82, 99, 98 S.Ct. 2187, 2198, 57 L.Ed.2d 65 (1978).

The central issue on this motion is whether the movants' prior convictions, taken pursuant to plea agreements, can be used as predicate offenses to support a RICO charge without running afoul of the Double Jeopardy Clause. The Supreme Court recently confronted a virtually identical issue, under a criminal enterprise statute other than RICO, in *Garrett v. United States,* — U.S. —, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985). In *Garrett,* the Court ruled that the use of prior criminal convictions to support a prosecution under the continuing criminal enterprise provision of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 848, does not violate the Double Jeopardy

Clause's proscription against second prosecution after conviction, 105 S.Ct. at 2411–19, or multiple punishment for the same offense, *id.,* at 2419–20. *Accord United States v. Young,* 745 F.2d 733, 748–52 (2d Cir.1984).

In so holding, Justice Rehnquist, writing for a majority of the Court, established a two-part test to determine whether prosecution of certain conduct under two different statutory provisions violates the Fifth Amendment's prohibition against being twice put in jeopardy for the same offense. First, this Court must determine whether Congress, in enacting RICO, intended to allow both the prosecution of a specific racketeering act and a subsequent RICO prosecution using that racketeering conviction as an element of the RICO charge or whether Congress intended to allow only prosecution of the racketeering act alone or as part of a RICO charge, but not both. 105 S.Ct. at 2411. If the Court determines that Congress intended the latter, the Court's analysis is complete and no further prosecution is permissible. *Id.* If, on the other hand, the Court determines that Congress intended the former, then the Court must determine whether prosecution for a RICO offense after an earlier prosecution for a predicate offense comports with the "lesser included offense" principles of the Double Jeopardy Clause. *Id.* at 2415–19.

### 1. *Congressional Intent*

The principal test for determining congressional intent in double jeopardy cases was set forth in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932):

The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not....

Although *Blockburger* arose in the context of a multiple punishment case, and clearly applies in such a case, *United States v. Barton,* 647 F.2d 224, 235 (2d Cir.), *cert.*

*denied,* 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981), it also applies to successive prosecution cases. *Illinois v. Vitale,* 447 U.S. 410, 416, 100 S.Ct. 2260, 2265, 65 L.Ed.2d 228 (1980).

It can be argued, as have the government and several courts, that since a RICO charge requires proof of facts in addition to those underlying a predicate offense, that is, proof of a second predicate offense within a ten-year period, the predicate offense and the RICO offense are not the same offense under the *Blockburger* standard. *See, e.g., Barton,* 647 F.2d at 236; *United States v. Boylan,* 620 F.2d 359, 361 (2d Cir.1980), *cert. denied,* 449 U.S. 833, 101 S.Ct. 103, 66 L.Ed.2d 38 (1981). In *Garrett,* however, the Supreme Court appears to suggest that if the *Blockburger* rule is taken as a conclusive determinant of legislative intent, it could be concluded that Congress intended the conduct at issue to be punishable either as a predicate offense or as a part of a RICO offense, but not both. 105 S.Ct. at 2412.

This dispute notwithstanding, it is agreed by the Supreme Court and the lower courts that the *Blockburger* rule is not a conclusive determinant of legislative intent; it is simply a useful canon of statutory construction when congressional intent is otherwise ambiguous. *Garrett,* 105 S.Ct. at 2412; *Johnson,* 104 S.Ct. at 2541 n. 8; *Missouri v. Hunter,* 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983); *Albernaz v. United States,* 450 U.S. 333, 340, 101 S.Ct. 1137, 1142, 67 L.Ed.2d 275 (1981); *Whalen v. United States,* 445 U.S. 684, 691–92, 100 S.Ct. 1432, 1437–38, 63 L.Ed.2d 715 (1980); *United States v. Hawkins,* 658 F.2d 279, 287 (5th Cir.1981). The language, structure, and legislative history of RICO, however, make Congress' intent in enacting RICO unmistakably clear. *See infra* pp. 841–42. Thus, the *Blockburger* test is inapplicable.

■ It bears noting that the Double Jeopardy Clause is principally a restraint on judges and prosecutors, not legislatures. *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). The

Supreme Court has declared that "[t]here is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which it has power to prohibit *and punishing also the completed transaction.*" *Albrecht v. United States,* 273 U.S. 1, 11, 47 S.Ct. 250, 254, 71 L.Ed. 505 (1927) (emphasis added) (quoted in *Garrett,* 105 S.Ct. at 2412); *see also Johnson,* 104 S.Ct. at 2541. There is little doubt, after examining the language and legislative history of RICO, that Congress, in enacting RICO, sought to allow the separate prosecution and punishment of predicate offenses and a subsequent RICO offense based in large part on those predicate offenses.

First, the language of the statute indicates that Congress sought to supplement, rather than supplant, existing crimes and penalties. Section 904(b), for example, in a rather unique exercise of legislative prerogative, *Russello v. United States,* 464 U.S. 16, 104 S.Ct. 296, 302, 78 L.Ed.2d 17 (1983), provides that:

> Nothing in this title shall supersede any provision of Federal, State or other law imposing criminal penalties or affording civil remedies in addition to those provided for in this title.

Indeed, RICO's statutory scheme belies a contrary interpretation of congressional intent. Section 1961(5) provides that a:

> "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years *(excluding any period of imprisonment) after the commission of a prior act of racketeering activity.*

18 U.S.C. § 1961(5) (emphasis added). This language suggests that Congress envisioned the situation where a defendant is convicted and sentenced for a racketeering act and subsequently charged with a RICO violation based on the prior conviction. *See Hawkins,* 658 F.2d at 288; *United States v. Aleman,* 609 F.2d 298, 306 (7th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345,

63 L.Ed.2d 780 (1980); *United States v. DePalma,* 461 F.Supp. 778, 786–87 (S.D.N. Y.1978).

Second, this interpretation of the language of RICO is fully supported by the statute's legislative history:

It is the purpose of this Act to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime.

Organized Crime Control Act of 1970, Statement of Findings and Purpose, 84 Stat. 922, *reprinted in* 1970 U.S.Code, Cong. & Ad.News at 1073.

In *United States v. Rone,* 598 F.2d 564 (9th Cir.1979), *cert denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980), the Ninth Circuit declared that:

There is nothing in the RICO statutory scheme which would suggest that Congress intended to preclude separate convictions or consecutive sentences for a RICO offense and the underlying or predicate crimes which make up the racketeering pattern. The racketeering statutes were designed primarily as an additional tool for the prevention of racketeering activity, which consists in part of the commission of a number of other crimes. The Government is not required to make an election between seeking a conviction under RICO, or prosecuting the predicate offenses only. Such a requirement would nullify the intent and effect of the RICO prohibitions.

598 F.2d at 571. This interpretation has been adopted by several other Courts of Appeals, including the Second Circuit. *See, e.g., Hawkins,* 658 F.2d at 287; *Boylan,* 620 F.2d at 361; *see United States v. Angelilli,* 660 F.2d 23, 35 (2d Cir.1981), *cert. denied,* 455 U.S. 945, 102 S.Ct. 1442, 71 L.Ed.2d 657 (1982). The Second Circuit has observed that multiple punishment for a RICO offense and its underlying predicate offenses is not inconsistent with the Double Jeopardy Clause. *Boylan,* 620 F.2d at 361; *see United States v. Napolitano,* 552 F.Supp. 465, 481–82 (S.D.N.Y.1982). Indeed, courts considering the interplay between RICO and the Double Jeopardy Clause have repeatedly upheld (1) successive prosecutions for RICO violations and any of the offenses specified as predicate acts of racketeering, *see, e.g., United States v. Phillips,* 664 F.2d 971, 1009 (5th Cir.1981), *cert. denied,* 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982); *United States v. Brooklier,* 637 F.2d 620, 624 (9th Cir.1980), *cert denied,* 459 U.S. 1206, 103 S.Ct. 1194, 75 L.Ed.2d 439 (1983); *United States v. Solano,* 605 F.2d 1141, 1143 (9th Cir.1979), *cert. denied,* 444 U.S. 1020, 100 S.Ct. 677, 62 L.Ed.2d 652 (1980); .and (2) cumulative punishments for both RICO violations and separately charged predicate act offenses, *see, e.g., United States v. Walsh,* 700 F.2d 846, 856 (2d Cir.), *cert. denied,* 464 U.S. 825, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983); *Barton,* 647 F.2d at 234; *Boylan,* 620 F.2d at 361.

Any contrary interpretation of RICO would put federal prosecutors in the untenable position, when pursuing major racketeers, of having to choose between prosecuting either the predicate offenses or the RICO charge. *Cf. Garrett,* 105 S.Ct. at 2415. In many cases, the government may apprehend a racketeer for one offense before it is aware of, or has sufficient evidence to make a case against the racketeer, for other predicate acts he either has committed or would commit in the future. The instant case is a perfect example. Defendants Carmine Persico, Andrew Russo and Dominic Cataldo are all alleged to have committed racketeering acts after their 1981–82 pleas of guilty in the Eastern District to the charges in connection with Annicharico bribery scheme.[2] Under an inter-

---

**2.** *See, e.g.,* Racketeering Act 1 (C. Persico—Conspiracy to extort payments from construction companies until September 1984); Racketeering Act 45 (C. Persico and Cataldo—Bribery of prison official until September 1982); Racketeering Act 46 (Cataldo—Bribery of a public official until September 1982); Racketeering Act 47

pretation of RICO that only allows a prosecutor to charge a defendant with either a RICO offense or the underlying predicate offenses, but not both, the government, in 1980 and 1981, would have had to confront a difficult choice. It would have had to choose between prosecuting the defendants for various predicate offenses for which it had sufficient evidence to prove guilt or releasing the defendants with the hope that they would continue their racketeering activities, while under government surveillance, thus exposing themselves to prosecution under RICO. The Court declines to ascribe to Congress such an unlikely purpose.

Defendant McIntosh contends that his position in this litigation differs from that of the other movants and that Congress did not intend to apply RICO to a defendant in his situation. Each of the other movants was indicted for at least one post-plea racketeering act that clearly triggered the availability of RICO. *See supra* note 2. McIntosh, in contrast, was indicted under RICO based only on predicate offenses arising from the Annicharico bribery scheme. Each racketeering act charged in the indictment was originally charged in the Eastern District. McIntosh, however, did not plead guilty to all the Eastern District charges. He pleaded guilty only to the charge of bribing Annicharico in an effort to gain unwarranted treatment for Carmine Persico's motion to vacate his sentence (Racketeering Act 40). In return for McIntosh's guilty plea, the Eastern District Strike Force dismissed the other charges lodged against McIntosh.

McIntosh argues that his indictment in this case, for the same conduct as alleged in the Eastern District indictment, albeit under a different statute, smacks of prosecutorial overreaching and is contrary to all notions of fundamental fairness. In reply, the government argues, with some support,

that the United States Attorney's Office for the Southern District of New York is not bound by the Eastern District Strike Force's agreement not to try McIntosh on the dismissed charges. *See infra* p. 846; *cf. Ohio v. Johnson,* 104 S.Ct. at 2542 (where defendant pleads guilty to a lesser offense over the government's objections, the Double Jeopardy Clause does not prohibit the government from continuing its prosecution of the defendant on the greater charges).

If the government were charging McIntosh with a RICO violation based solely on the Annicharico bribery scheme and participation in a racketeering enterprise grounded solely on that scheme, 18 U.S.C. § 1962(c), there could be serious double jeopardy problems. Indeed, it is easy to imagine a well known organized crime figure pleading guilty to a few predicate offenses in one district and then having a federal prosecutor from a nearby district indicting the same defendant under RICO, based solely on his prior pleas and an allegation that the defendant's activity constitutes a criminal enterprise in and of itself, *id.* § 1961(4). Even if the plea is to only one predicate offense and the other predicate is, as in McIntosh's case, a charge dismissed with prejudice by another United States Attorney, a subsequent RICO conviction based solely on the prior activity which was the subject of the plea is troubling.[3] In her concurring opinion in *Garrett,* Justice O'Connor stated that "where the defendant continues unlawful conduct after the time the Government prosecutes him for a predicate offense," the defendant cannot later foreclose the government's use of the conviction as a predicate offense in a criminal enterprise prosecution. 105 S.Ct. at 2422. She noted, however, that "the defendant's interest in finality would be more compelling where there is no indication of continuing wrongdoing after the first prosecution." *Id.*

---

(Russo—Loansharking conspiracy until April 4, 1985).

**3.** The Court notes that when Garrett pleaded guilty to certain predicate offenses, the government agreed to dismiss the related charges

"without prejudice to the Government's right to prosecute him on any other offenses he may have committed." *Garrett,* 105 S.Ct. at 2410; *see also Rone,* 598 F.2d at 571.

■ Although one or more prior convictions of racketeering acts, obtained pursuant to a plea agreement, are unquestionably valid to support a RICO charge, there must also exist an allegation of either (1) some type of post-plea unlawful conduct, *id.,* or (2) a post-plea accumulation of evidence sufficient to establish either a second predicate offense or participation in a criminal enterprise, *see Brown,* 432 U.S. at 169 n. 7, 97 S.Ct. at 2227 n. 7; *cf. Oyler v. Boles,* 368 U.S. 448, 452 n. 6, 82 S.Ct. 501, 505 n. 6, 7 L.Ed.2d 446 (1962). This test would not, as the Supreme Court cautioned against *Garrett,* leave prosecutors with the untenable choice of having to "choose between prosecuting the [racketeer] on the offense of which it could prove him guilty or releasing him with the idea that he would continue his [racketeering] activities so that the Government might catch him [again] and then be able to prosecute him on the [RICO] offense." 105 S.Ct. at 2415. At the same time, this standard would preclude an ambitious federal prosecutor from scraping together a defendant's two prior pleas to predicate acts and charging him, although he had done nothing other than that for which he had pleaded guilty and was sentenced, under the RICO statute. In so doing, it allows courts to preserve the finality of judgments in criminal prosecutions and protect the defendant from prosecutorial overreaching without needlessly hampering federal prosecutors in their enforcement of federal criminal laws.

In the case of McIntosh, the government undoubtedly meets the standard set forth above. Admittedly, McIntosh's predicate acts all emanate from the Annicharico bribery scheme, the subject of his plea bargain agreement. Since RICO requires proof of two predicate acts and a criminal enterprise, 18 U.S.C. § 1962(c), proof of McIntosh's involvement in the Annicharico bribery scheme alone will not satisfy the requirements of RICO. An allegation that McIntosh was conducting a criminal enterprise by himself, while arguably permissible under RICO, *id.* § 1961(4), lacks the post-plea unlawful conduct or discovery thereof needed to pass muster under the Double Jeopardy Clause.

The indictment, however, alleges that McIntosh's involvement in the criminal enterprise, known as the Colombo Family, continued until April 4, 1985, well after his 1982 plea bargain and the 1977–78 Annicharico bribery scheme. If the government fails to proffer credible evidence to sustain that allegation of post-plea involvement, the Court will entertain a motion by defendant McIntosh to dismiss the RICO charges against him. At this point, however, the government has satisfied the requirements of RICO and the Double Jeopardy Clause. Accordingly, the Court finds that Congress, in enacting RICO, did intend to subject defendants such as McIntosh, no less than defendants Persico, Russo and Cataldo, to separate prosecution and punishment for a violation of RICO and the statutes proscribing RICO's predicate acts.

2. *"Lesser Included Offense" Principles*

Having determined that Congress intended RICO to be a separate offense and that it intended to permit prosecution for both the predicate offenses and the RICO offense, the Court must now determine whether prosecution for a RICO offense after an earlier prosecution for a predicate offense is constitutional under the Double Jeopardy Clause. The critical inquiry is whether a RICO offense is considered the "same offense" as one or more of its predicate offenses within the meaning of the Double Jeopardy Clause. *Garrett,* 105 S.Ct. at 2415.

As discussed above, *see supra* pp. 840–841, a RICO offense is not, in a literal sense, the "same" offense as one of the predicate offenses. A RICO offense requires the jury to find that the defendant committed two predicate offenses within a ten-year period. 18 U.S.C. §§ 1962, 1961(5). To prove a RICO violation, therefore, requires proof of a second racketeering act.

■ The Supreme Court, however, has developed the "lesser included offense" doctrine within the Double Jeopardy jurisprudence. The seminal case in the area is

*Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). *Brown* established the general rule that the Double Jeopardy Clause prohibits the government from trying a defendant for a greater offense after it has convicted him of a lesser included offense. *Id.* at 168–69, 97 S.Ct. at 2226–27. Such would be the equivalent of two trials for the same offense, *id.* at 168, 97 S.Ct. at 2226, the prohibition of which is at the heart of the Double Jeopardy Clause. *Jeffers v. United States,* 432 U.S. 137, 150, 97 S.Ct. 2207, 2216, 53 L.Ed.2d 168 (1977). In *Brown,* the Court held that the misdemeanor of joyriding, which is the temporary operation of a vehicle without the owner's permission, was a lesser included offense of the felony of automobile theft. Thus, a prosecution for the misdemeanor barred a second prosecution for the felony. The defendant, Nathaniel Brown, had engaged in a single course of conduct—driving a stolen car. The very same conduct would support a misdemeanor prosecution for joyriding or a felony prosecution for automobile theft, depending only on the defendant's state of mind while he was engaged in the conduct at issue. Every moment of his conduct was as relevant to the joyriding charge as it was to the automobile theft charge.

In contrast, the RICO charges lodged against defendants Persico, Russo and Cataldo are based not only on the underlying predicate Annicharico bribery offenses, to which they pleaded guilty, but also on a variety of separate post-plea racketeering acts. *See supra* p. 842 note 2. Persico, for example, is also alleged to have engaged in bribery of a prison official and a conspiracy to extort payments from construction companies. Russo is alleged to have engaged in a wide-ranging loansharking conspiracy. Cataldo is alleged to have engaged in two separate acts of bribery of prison officials and wide-ranging violations of narcotics laws. All of them, along with McIntosh, are alleged to have been involved with a criminal enterprise, known as the Colombo Family, until April 4, 1985. Participation in the enterprise and the distinct acts of bribery, conspiracy to commit extortion, loansharking, and narcotics violations can hardly be described as a single course of conduct. In this case, the racketeering enterprise activities spanned several years and involved a wide variety of criminal activities.

Every minute that Nathaniel Brown drove or possessed the stolen automobile he was simultaneously committing the lesser included offense and the greater felony; the same is simply not true of defendants in this case. Carmine Persico's bribery of Annicharico, for example, is separate from his later bribery of a prison official or his participation in an extortion conspiracy. Cataldo's bribery of Annicharico is separate from his later bribery of a prison official or his violations of narcotics laws. Russo's bribery of Annicharico is separate from his participation in a loansharking conspiracy. McIntosh's involvement in the criminal enterprise after his plea is separate from his bribery of Annicharico.

The conduct of and charges against these defendants are significantly different from the conduct of and charges against Nathaniel Brown. These differences counsel against ready transportation of the "lesser included offense" principles of Double Jeopardy from the classically simple situation presented in *Brown* to the multi-layered conduct, both as to time and place, involved in this case. *Garrett,* 105 S.Ct. at 2417; *Whalen,* 445 U.S. at 708–14, 100 S.Ct. at 1446–49 (Rehnquist, J., dissenting); *Hawkins,* 658 F.2d at 288. The problem is that traditional greater and lesser included offenses, such as armed robbery and robbery, arise in fact from the same act or transaction, while RICO and its underlying predicate offenses do not. *Hawkins,* 658 F.2d at 288. In any event, the claim of defendants Persico, Cataldo, Russo and McIntosh that the use of convictions or charges arising from the Annicharico bribery scheme to support the government's RICO charges against them does not comport with the Double Jeopardy Clause—under the "lesser included offense" principles of *Brown*—is without merit.

Accordingly, the motion of defendants Persico, Russo, Cataldo and McIntosh to dismiss the RICO charges against them on the basis of the Double Jeopardy Clause is denied.

### B. *Breach of Plea Agreement*

■ Defendants also argue that their plea agreements with the Organized Crime Strike Force for the Eastern District of New York with respect to the Annicharico bribery scheme is a bar to the United States Attorney's Office for the Southern District's use of the Annicharico pleas as one or more RICO predicates. The plea agreements, however, clearly indicate that the bargains are between the defendants and the Organized Crime Strike Force for the Eastern District of New York. The agreements do not purport to, nor do they, bind any other prosecuting attorneys. *Abbamonte*, 759 F.2d at 1072; *United States v. Alessi*, 544 F.2d 1139, 1153–54 (2d Cir.), *cert. denied*, 429 U.S. 960, 97 S.Ct. 384, 50 L.Ed.2d 327 (1976); *United States v. Papa*, 533 F.2d 815, 824 (2d Cir.), *cert. denied*, 429 U.S. 961, 97 S.Ct. 387, 50 L.Ed.2d 329 (1976). In fact, Carmine Persico's plea agreement explicitly states that it "is binding on the United States only in [the Eastern] district." (Plea Agreement, *United States v. Persico*, Nos. 81–42, 80–596, dated August 10, 1981, at 3). Thus, even if the Eastern District Strike Force committed itself not to use the Annicharico bribery offenses as RICO predicates, that agreement does not preclude the United States Attorney's Office in the Southern District from using them as such.

Accordingly, the motion of defendants Carmine Persico, Russo, Cataldo and McIntosh to dismiss the RICO charges based on purported violations of their plea agreements is denied.

### C. *Rule 11(c)(1)*

■ Rule 11(c)(1) of the Federal Rules of Criminal Procedure requires that a court, before accepting a plea of guilty, inform the defendant of "the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provid-

ed by law." Defendants Persico, Russo, Cataldo and McIntosh argue that use of their bribery convictions in the Annicharico affair as predicate offenses in a subsequent RICO indictment is a consequence of their pleas about which they were not advised, as required under Rule 11(c)(1).

The government contends that, even if defendants' claim has merit, the proper remedy is not dismissal of the RICO charges, but rather a motion before the Eastern District of New York to withdraw their guilty pleas. While this may be within the range of appropriate remedies, *see Mabry v. Johnson*, 467 U.S. 504, 104 S.Ct. 2543, 2548 n. 11, 81 L.Ed.2d 437 (1984); *Santobello v. New York*, 404 U.S. 257, 262–63, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971), a recent Second Circuit case involving the related issue of breach of a plea agreement suggests that this Court has the authority, should it deem exercise thereof proper in a given situation, to order dismissal of an indictment drawn in violation of a prior plea agreement. *Abbamonte*, 759 F.2d at 1072.

Nonetheless, the failure of the United States District Court for the Eastern District of New York to advise the defendants of the possibility that the conduct to which they pleaded guilty may later constitute a RICO predicate is not a violation of Rule 11. Rule 11 only required the Eastern District Court to advise the defendants of direct consequences of their pleas, not collateral consequences. *United States v. Russell*, 686 F.2d 35, 38 (D.C.Cir.1982); *Strader v. Garrison*, 611 F.2d 61, 63 (4th Cir.1979); *Bye v. United States*, 435 F.2d 177, 179 (2d Cir.1970); *see, e.g., United States v. Crowley*, 529 F.2d 1066, 1072 (3d Cir.) (loss of civil service job as a result of felony conviction), *cert. denied*, 425 U.S. 995, 96 S.Ct. 2209, 48 L.Ed.2d 820 (1976); *Cuthrell v. Director, Patuxent Inst.*, 475 F.2d 1364, 1366 (4th Cir.) (nature of institution to which defendant was sent), *cert. denied*, 414 U.S. 1005, 94 S.Ct. 362, 38 L.Ed.2d 241 (1973); *Meaton v. United States*, 328 F.2d 379, 380 (5th Cir.1964) (loss of rights to vote and travel abroad),

*cert. denied*, 380 U.S. 916, 85 S.Ct. 902, 13 L.Ed.2d 801 (1965). The potential use of the same conduct as a predicate in a subsequent RICO prosecution is not normally going to be a direct consequence of a defendant's guilty plea. In this case, it is the defendant's post-plea racketeering acts and/or involvement in the Colombo Family criminal enterprise that triggers the application of RICO. There was no duty under Rule 11 to forecast defendants' commission of other unlawful conduct and advise them of the consequences thereof.

Accordingly, the motion of defendants Carmine Persico, Russo, Cataldo and McIntosh to dismiss the RICO charges on the basis of a Rule 11 violation is denied.

## CONCLUSION

For the foregoing reasons, the motion of defendants Carmine Persico, Russo, Cataldo and McIntosh to dismiss the RICO charges lodged against them on the basis of asserted violations of the Double Jeopardy Clause, prior plea agreements, or Rule 11 is denied.

SO ORDERED.