**UNITED STATES of America**

v.

**Carmine PERSICO, a/k/a "Junior," Gennaro Langella, a/k/a "Gerry Lang," Alphonse Persico, a/k/a "Little Allie Boy," John J. DeRoss, a/k/a "Jackie," Anthony Scarpati, a/k/a "Scappy," Andrew Russo, a/k/a "Andy Mush," Dominic Cataldo, a/k/a "Little Dom," and Hugh McIntosh, a/k/a "Apples," Defendants.**

**S 84 Cr. 809 (JFK).**

United States District Court,
S.D. New York.

Sept. 25, 1986.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for the U.S.; Bruce A. Baird, Aaron R. Marcu, Frank H. Sherman, Asst. U.S. Attys., of counsel.

Frank Lopez, Brooklyn, N.Y., for defendant Carmine Persico.

David Breitbart, New York City, for defendant Gennaro Langella.

David DePetris, Stanley Meyer, New York City, for Alphonse Persico.

Dennis Peterson, Staten Island, N.Y., for defendant John J. DeRoss.

Jacob R. Evseroff, Brooklyn, N.Y., for defendant Anthony Scarpati.

George Santangelo, New York City, for defendant Andrew Russo.

Michael Hurwitz, New York City, for defendant Dominic Cataldo.

Susan Kellman, New York City, for defendant Hugh McIntosh.

KEENAN, District Judge:

## Background

All defendants were convicted by jury verdict after an eight-month trial of RICO conspiracy violations, 18 U.S.C. § 1962(d) and all, save defendant Jack DeRoss, were convicted of substantive RICO violations, 18 U.S.C. § 1962(c). The jury also convicted on several other counts and acquitted on some other counts as well. To the degree necessary a factual recital and statement relating to the other convictions will be contained in the discussion below. The jury found that the defendants were members of, or associated with, the Colombo Family of La Cosa Nostra, a criminal enterprise that systematically engaged in a wide-range of criminal activities.

Several of the defendants move for an order setting aside the jury's verdict and entering judgments of acquittal, pursuant to Fed.R.Crim.P. 29(c), and for other relief. In the main, the motions raise arguments already advanced and rejected by this Court.

The defendant Dominic Cataldo joins in the motions applicable to him. Although defendant Gennaro Langella filed no post-trial motions, the Court assumes that he joins with those of his co-defendants.

All motions are denied for the reasons set forth below.

## Discussion

### Carmine Persico's Due Process Contentions

Carmine Persico claims that the Indictment is the product of Government misconduct, so outrageous as to have deprived Persico of his right to due process of law and to require dismissal of the prosecution. He also urges a hearing to be held to establish the alleged misconduct. His son, Alphonse Persico, joins in this motion.

This and other parts of the defense motion relate to the bribery of Richard Annicharico, a Special Agent of the Internal Revenue Service, in violation of 18 U.S.C. § 201(b)(3). Defendants Carmine Persico, Andrew Russo, Dominic Cataldo and Hugh McIntosh all pleaded guilty to some aspects of this offense in the United States District Court for the Eastern District of New York in 1981 and 1982. Here, Carmine Persico was found guilty of five specific racketeering acts relating to the Annicharico briberies. On August 11, 1981 he pleaded guilty in the Eastern District of New York to conspiracy to bribe a public official, Agent Annicharico, (18 U.S.C. § 371). Those charges are essentially the racketeering acts 18–22 which Carmine Persico was found guilty of and which are the subject of this portion of the motion. By pleading guilty in the Eastern District without preserving the issue, Persico waived his due process claim. *United States v. Muench,* 694 F.2d 28, 34 (2d Cir.1982), *cert. denied,* 461 U.S. 908, 103 S.Ct. 1881, 76 L.Ed.2d 811 (1983) (a guilty plea is a waiver of all non-jurisdictional defects), see also *Franklin v. United States,* 589 F.2d 192, 194, 195 (5th Cir.1979), *cert. denied,* 441 U.S. 950, 99 S.Ct. 2177, 60 L.Ed.2d 1055 (1979).

Carmine Persico contends that he is entitled to an evidentiary hearing in connection with his alleged due process claim. The Court, over repeated prosecution objection, gave Persico broad latitude to prove governmental misconduct at trial.

Over objection Carmine Persico was permitted to call Joel Cohen, a former Strike Force prosecutor, as a witness. He subpoenaed Mr. Cohen. The Government maintains that Carmine Persico's counsel interviewed him and that Mr. Cohen appeared at the Courthouse on the appointed day. However, Mr. Cohen was discharged and not called to testify. The defense does not dispute those Government assertions.

Following is a summary recital of the evidence relating to the Annicharico situation.

In the summer of 1977, one Victor Puglisi asked Special Agent Annicharico to have Carmine Persico brought from the United States Penitentiary in Atlanta, where he was serving a sentence for hijacking, to the Metropolitan Correctional Center in New York so that his "colleagues," Andrew Russo, in particular, could meet with him.

The Eastern District Organized Crime Task Force obtained a writ of habeas corpus *ad testificandum,* and Persico was produced in New York. Shortly thereafter, Puglisi passed a bribe to the agent to compensate him for the move. Later in the year, Carmine Persico was returned to Atlanta by the authorities. In December, 1977, Puglisi offered the agent another bribe. Again, Carmine Persico was brought to New York on a writ and again a payoff was made. In a recorded conversation with the agent on February 2, 1978 (GX 118), Carmine Persico confirmed that Victor Puglisi was acting on behalf of Mr. Persico and Andrew Russo in his dealings with the agent. In that conversation, Carmine Persico offered the agent $250,000 so Mr. Persico could get out of jail and told the agent that Puglisi was working for him. The evidence at trial supports the proposition that Carmine Persico was brought to New York because he and his subordinates wanted that to happen and paid for it to happen. The jury's verdict was proper under the circumstances. The defense contention that the Government invented the crimes and manipulated Carmine Persico into committing them was rejected by the jury and the Court sees nothing wrong with the jury's finding.

At the time in 1977 when the Eastern District Organized Crime Strike Force was investigating the Annicharico matter, part of it was taking place in the Strike Force offices. The prosecutor, Joel Cohen, filed with the District's Chief Judge, Jacob Mishler, a sealed affidavit setting forth the nature and progress of the investigation. A copy of that affidavit, dated February 3, 1978, accompanied the Government's Memorandum of Law on this motion. Mr. Cohen informed the Chief Judge about the writs and the facts surrounding their issuance. Rather than disciplining the prosecutors for misconduct, Judge Mishler permitted the investigation, including an aspect involving Persico's filing false statements with the court, to proceed.

Despite Mr. Cohen's appearance in this Courthouse during the trial of this Indictment pursuant to Carmine Persico's subpoena, Mr. Persico elected not to call him as a witness.

The Government urges in its memorandum on this motion on p. 19 and 25 that the defense failed to call Mr. Cohen because his "testimony would utterly decimate Persico's misconduct claim" and "it is inescapable that Persico sent Mr. Cohen home because his testimony would have unmasked Persico's alleged misconduct defense."

▆ The Court will not speculate as to why the defense did not call Mr. Cohen. But the fact is that they had every opportunity to call him over Government objection. To reopen all this now would be a colossal waste of judicial time and a gross abuse of discretion by this Court.

On the facts of this case, *United States v. Archer* 486 F.2d 670 (2d Cir.1973); *United States v. Twigg,* 588 F.2d 373 (3d Cir. 1978) and *Greene v. United States,* 454 F.2d 783 (9th Cir.1971) give no solace to the defense position.

Even were the writs, which brought Carmine Persico to New York, obtained improperly (which the Court does not find), the rulings in *Hampton v. United States,* 425 U.S. 484, 490, 96 S.Ct. 1646, 1650, 48 L.Ed.2d 113 (1976), *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973) and *United States v. Hastings,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) would persuade the Court not to upset the conviction or order a hearing. Moreover, the decision in *United States v. Caputo and Marino,* 85 Cr. 0150 from the Eastern District of Pennsylvania is in no way controlling and is distinguishable from the facts here.

In partial support of his motion Carmine Persico submits an affidavit from an attorney, John Jacobs. Mr. Jacobs was a member of the Eastern District Organized Crime Strike Force at the time of the Annicharico investigation but he "had no direct responsibility in the Annicharico undercover IRS investigation." (Jacobs affidavit ¶ 4). The Jacobs affidavit states that, ¶ 7, in his "opinion ... the two writs of Habeas

Corpus Ad Testificandum were a sham." The affidavit, in ¶ 10, contains an irrelevant and unwarranted bit of character assassination concerning a distinguished Federal judge and concludes in ¶ 12 with a bit of rumor mongering worthy of a second rate gossip columnist or a daytime soap opera as to how the instant indictment was prosecuted in the Southern District of New York, rather than the Eastern District of New York.

It should be noted that Mr. Jacobs on several occasions during the trial came to the courtroom and the Court observed him conferring with defense counsel during those visits. It is significant that Mr. Jacobs did not choose to come forward until after these convictions were obtained and that much of the information he claims to have, came into his possession nearly nine years ago and yet this is the first time he has come forward.

A cynic might also observe that Mr. Jacobs is presently representing Ralph Scopo in *United States v. Salerno, et al.*, SSS 85 Cr. 139 (RO) before Judge Owen of this court. Mr. Scopo is an alleged member of the Colombo Family who was severed during this trial due to ill health. Mountains of evidence in the form of tape recordings with Mr. Scopo's voice on them were introduced in this trial in connection with the Construction Companies' payoffs phase of this case. This Court chooses not to be cynical and the Jacobs representation of Scopo plays no part in this ruling.

█ The Jacobs affidavit affords no basis for a hearing concerning Carmine Persico's claims. Mr. Jacobs has no personal knowledge of the investigation and the defense had every opportunity to examine Joel Cohen, the original prosecutor in the Annicharico phase of the case, before the jury. It chose not to do so.

In connection with Alphonse Persico's phase of this motion, Stanley Meyer, Esq. submitted an affidavit on September 17, 1986 in paragraph 6 of which he has the temerity to state that "had there been no confusion because of the fact that his uncle had the same name he had (Alphonse Persi-

co), there is no way he would have been convicted." This audacious assertion about "confusion" is so blatantly false and insulting to the Court as to require special comment.

Throughout the whole trial, on literally scores of occasions, the Court interrupted the proceedings to specially instruct the jury that references to an "Alphonse Persico" were to the uncle, not the defendant nephew. There was no possibility of "confusion" and to suggest otherwise in an affidavit, borders on contemptible conduct.

The Due Process motions are denied.

### The DeChristopher Testimony

Alphonse Persico moves to strike the testimony of the witness Fred DeChristopher. The Court adheres to its original rulings on this subject. The testimony was admissible under Fed.R.Evid. 801(d)(2)(E) and *United States v. Stratton*, 779 F.2d 820 (2d Cir. 1985); *United States v. Ruggiero*, 726 F.2d 913.

### The Iannuzzi Testimony

█ Alphonse Persico moves to strike the testimony of Joseph Iannuzzi based on a recent decision, *United States v. Cervantes Pacheco*, 793 F.2d 689 (5th Cir. 1986). In *Cervantes Pacheco*, the Government pretargeted specific individuals and arranged for a contingent fee arrangement with the witness. Neither of these considerations apply with regard to Iannuzzi. Neither he nor the FBI knew, at the start of the investigation, where it would end up or whom it would involve. Further, the lump-sum payment which Iannuzzi has been promised at the end of "all judicial proceedings" is to "cover reasonable travel and relocation expenses to Iannuzzi's new area of residence within the continental United States of America." This is not a contingent fee arrangement. There is nothing wrong with the Government's agreement with Iannuzzi under *United States v. Cuomo*, 479 F.2d 688, 692 (2d Cir.), *cert. denied*, 414 U.S. 1002, 94 S.Ct. 357, 38 L.Ed.2d 238 (1973) (quoting *United States v. Smalls*, 363 F.2d 417, 420 (2d

Cir.1966), *cert. denied,* 385 U.S. 1027, 87 S.Ct. 755, 17 L.Ed.2d 675 (1967)).

The motion to strike the Iannuzzi testimony is denied.

### Sufficiency of the Evidence

Alphonse Persico, Anthony Scarpati, and John J. DeRoss contend that the evidence on which the jury found them guilty was insufficient to sustain the verdicts. Under applicable law, their motions are denied.

### A. Alphonse Persico

■ The jury found that Alphonse Persico committed two predicate acts of racketeering and found him guilty of two counts of racketeering. His moving papers contain attacks on the verdict and a recapitulation of his unsuccessful arguments to the jury. Essentially, his sufficiency claims boil down to: (1) there was no evidence from which a jury could conclude that he knew that he was participating in giving a thing of value to a prison official when he arranged for a Colombo Family associate in Las Vegas to take care of Ernest Goss's expenses there; and (2) there was no evidence from which a jury could infer that he believed that a federal official was involved in the bribery scheme seeking to have his father, Carmine, moved to and kept in a prison near New York. The arguments fail.

With respect to the Goss bribe, the evidence shows that Alphonse Persico knew that Ernest Goss was a federal prison official when the free trips to Las Vegas were arranged. Alphonse Persico was on his father's visiting list at the Ashland prison (GX 816). Goss testified and records showed that Alphonse Persico was coming to the prison to visit his father in July, 1979 (Tr. 7227–29; GX 812). Goss testified that Carmine Persico's whole family came to the prison for a picnic on about August 11, 1979 (Tr. 7346). Fred DeChristopher testified that Carmine Persico told him that his son Alphonse had Colombo associate, Vinny Vingo, arrange Goss' accommodations in Las Vegas (Tr. 13, 724). When viewed

against the backdrop of Carmine Persico's corrupt relationship with Goss, the jury was justified in concluding that Alphonse Persico knew that Goss was a federal official. The inference was a fair and proper one.

Alphonse Persico's second sufficiency claim is founded upon the contention that there is no evidence that the person whom the Colombo Family bribed through Joseph Iannuzzi in order to ensure that Carmine Persico could serve his prison sentence in a nearby prison was a federal official. Viewing the evidence "not in isolation but in conjunction," *United States v. Geaney,* 417 F.2d 1116, 1121 (2d Cir.1969), *cert. denied,* 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed.2d 539 (1970), this sufficiency argument also fails.

The jury learned that Joseph Iannuzzi told Dominic Cataldo and one Thomas Agro that he had a "Government connection" in Washington, D.C., who could alter decisions made by the Federal Bureau of Prisons. By apparently arranging for Cataldo and Carmine Persico to be designated to the prisons of their choice, Iannuzzi proved the supposed "connection." The proof showed that Carmine Persico, Gennaro Langella, Dominic Montemarano [1], Dominic Cataldo, and unindicted co-conspirators Thomas Agro and Joseph Cataldo approved and/or participated in the payment in April, 1982, of a $20,000 cash bribe to Iannuzzi's connection to compensate the "connection" for causing Carmine Persico to be jailed in the federal prison at Danbury, Connecticut. On the evidence the jury was justified in inferring that the defendant intended for the payment to be used to corrupt a federal official.

The evidence was that Alphonse Persico's involvement in the bribery scheme began no later than late February, 1982, before the $20,000 bribe was paid. Agro told Iannuzzi at that time that "Little Vic," a member of Alphonse Persico's crew, was setting up a meeting between Agro and

---

1. Dominic Montemarano was originally a co-defendant. He was severed shortly before trial

after he underwent serious surgery.

Persico (GX 717). Alphonse Persico's role in the scheme was revealed in August, 1982 when Carmine Persico was transferred from Danbury. A series of conversations recorded from Montemarano's telephone demonstrated Alphonse Persico's participation in the bribery scheme (GX 745–756).

The jury was justified in finding that Alphonse Persico participated in the bribery scheme charged, with intent to corrupt a federal official.

### B. Anthony Scarpati

Scarpati contends that the evidence was insufficient to convict him. This is essentially a reiteration of his unsuccessful jury argument that Arlyne Brickman, Frank Ancona and FBI surveillance agent Ronald Andachter should not be believed. The jury was justified in rejecting that argument.

■ With respect to the Brickman loan, the tape recordings, the surveillance, and the testimony were sufficient to sustain the jury's finding that Scarpati was guilty of loansharking.

With respect to the Ancona loan, the evidence was that Ancona personally borrowed money from Scarpati (Tr. 7738), that Scarpati let Ancona know that he, Scarpati, was aware of Ancona's problems with Scarpati's fellow loanshark and colleague in the Colombo Family, Gennaro Langella (Tr. 7738), and that, because he knew that Scarpati was a Capo in the Colombo Family, Ancona reasonably was afraid of what Scarpati would do to him if he failed to make his payments (Tr. 7740). *United States v. Gigante*, 729 F.2d 78, 83 (2d Cir.), *cert. denied*, 476 U.S. 1206, 104 S.Ct. 2390, 81 L.Ed.2d 348 (1984). The evidence supports the jury's verdict on the Ancona loan.

### C. John J. DeRoss

■ DeRoss' sufficiency claim repeats the unsuccessful arguments over disputed facts that he made at trial and which the jury, by its verdict, rejected. Govern-

ment's Exhibit 350, the tape-recorded conversation of DeRoss, the late Paul Castellano and Anthony Amodeo at Castellano's house, when interpreted as the Government argued it should be interpreted, shows DeRoss' active participation in the control of the restaurant unions by the Colombo and Gambino Families and their use of that control to get payoffs from restaurant owners. Negotiations are heard on the tape recording how a payoff from Frank Sofia should be split between the Gambino and Colombo Families. There is other evidence to the same effect including Frank Falanga's[2] tape-recorded conversations with Vincent DiPenta about DeRoss being Vito Pitta's[3] boss, and Carmine Persico's statements to Fred DeChristopher about DeRoss being his man in control of the restaurant unions, including specific reference to the Sherry Netherlands as a restaurant he controlled (GX 311–313; Tr. 13, 708–09). This evidence was sufficient to show DeRoss' knowledge of and agreement to the payoffs. Whether DeRoss got money or whether the payoffs in fact occurred is irrelevant because DeRoss was convicted of the racketeering conspiracy, Count One. Obviously, this required only an agreement to commit crimes, not proof of completed crimes.

Under the ruling in *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir.1984) and the cases cited therein, the evidence was sufficient to support the convictions.

### DeRoss Confrontation Motion

■ John J. DeRoss argues that the Government's failure to call Anthony Cece and Frank Sophia violated his sixth amendment right to confrontation. It appears both from this DeRoss motion and from previous motions made at and before trial, that DeRoss knows the whereabouts of both Anthony Cece and Frank Sophia, whose testimony he claims would have helped him. Further, they both have been

---

**2.** Frank Falanga was a co-defendant who was convicted along with all the other defendants. He died of natural causes the day after the verdict while incarcerated.

**3.** Vito Pitta is another union official, originally a co-defendant, as to whom the Government consented to a severance during jury selection.

spoken to by defense representatives. In *United States v. Inadi*, —— U.S. ——, 106 S.Ct. 1121, 1125–29, 89 L.Ed.2d 390 (1986), the Supreme Court held "that the Confrontation Clause does not embody [any] rule" that requires the Government to call co-conspirators as witnesses or to show that they are unavailable before using co-conspirator statements. *Id.*, at 1129. The Court in *Inadi* noted that if the co-conspirators were available, the defendant could call them to testify, and cross-examine them as hostile witnesses if necessary under Fed.R.Evid. 806, if the defendant thought such testimony would help him. *Id.*, at 1127–28.

DeRoss' motion is denied.

### Andrew Russo, Hugh McIntosh Motions

#### A. Double Jeopardy

Defendants Russo and McIntosh contend that their racketeering convictions in this case violate their rights under the double jeopardy clause. This issue was substantially litigated by the defendants both in this Court and in the Court of Appeals prior to trial, unsuccessfully.

■ In its July 23, 1985 Opinion and Order, this Court held that in utilizing defendants' prior convictions or dismissed charges as predicate acts of racketeering in a subsequent RICO case, the Government also must establish at trial either that the defendants so charged engaged "in some type of post-[guilty] plea unlawful conduct," or that the Government accumulated evidence after the plea demonstrating "participation in a criminal enterprise." *United States v. Persico*, 620 F.Supp. 836, 844 (S.D.N.Y.), *affirmed*, 774 F.2d 30 (2d Cir. 1985). In affirming this Court's ruling that this prosecution did not contravene the double jeopardy clause, the Court of Appeals specifically declined to consider whether the Constitution required the imposition of the condition established by this Court.[4]

### Andrew Russo

On April 26, 1982, Russo pleaded guilty in the Eastern District of New York to one count of conspiracy and one count of obstruction of justice in violation of Title 18, United States Code, §§ 371 and 1505. These pleas arose out of the Annicharico investigation. Neither specific crime was charged in the instant Indictment, although Russo was accused of six acts of racketeering arising from the same two-and-a-half-year bribery scheme which gave rise to the changes to which he earlier had pleaded guilty.[5] The jury found that he had committed them in connection with his membership in the Colombo Family racketeering enterprise and thus found him guilty on the two RICO counts.

In addition to evidence that Russo was guilty of racketeering as charged, there was also proof that Russo remained a leading member of the Colombo Family enterprise up until the filing of the superseding Indictment in April, 1985. Fred DeChristopher, his brother-in-law, testified that Russo was "made" in late 1975 and remains a member of the Colombo Family (Tr. 13, 663). This would be sufficient to satisfy the condition imposed by the Court in its July 23, 1985 decision. There was, however, additional proof that in 1983 and 1984, Russo with his sons skimmed money from the gambling earnings of a cruise ship, the casino which Russo controlled on behalf of the Colombo Family (Tr. 13, 677–81). There was evidence that Russo remained a member of the enterprise based on the testimony of his brother-in-law, Fred DeChristopher.

---

**4.** The Government continues to believe that the condition imposed by this Court exceeds the requirements of the double jeopardy clause.

It should be noted that at the conclusion of its memorandum of law p. 33 on these motions, the Government further chided the Court for "the latitude that this trial Court gave the defendants in attacking the Government's proof, attacking the Government's witnesses, indeed, attacking the Government itself." The Court acted only to insure a fair trial for both sides and not to prolong the trial.

**5.** Russo was charged in the Eastern District indictment with these other bribes, but they were dismissed when he pleaded guilty. Accordingly, jeopardy never attached as to them.

Carmine Persico, to prevent his apprehension and prosecution on the instant Indictment, hid out at the house of Mrs. DeChristopher, the sister of Andrew Russo. Arguably, a different choice would have been made had Russo quit the enterprise. DeChristopher testified that Carmine Persico, while hiding out, instructed him to "stay close" to Andrew Russo when Russo got out of prison (Tr. 13, 685). Thus, while considering in 1985 the crime Family during his absence, Carmine Persico thought of Andrew Russo.

The Government offered proof at trial that Russo remained a member of the enterprise charged long after pleading guilty in the Eastern District of New York.

### Hugh McIntosh

On November 1, 1982, McIntosh pleaded guilty in the Eastern District of New York to one count of bribery in violation of Title 18, United States Code, § 201 in connection with the Annicharico investigation. That charge basically constituted one of four acts of racketeering which the jury in this case found he committed in connection with his participation in the Colombo Family racketeering enterprise. The briberies constituting the other three racketeering acts had been charged in the Eastern District indictment, but were dismissed when McIntosh pleaded guilty to the one bribery count.

At this trial, there was proof that McIntosh engaged in those unlawful acts and that those acts were committed in connection with the enterprise charged. There was also proof that McIntosh remained a member of that enterprise after his role in the bribery scheme ended.

In November and December of 1978, after McIntosh claims he ceased his participation in the enterprise, McIntosh accepted 28 collect telephone calls from Carmine Persico (GX 839). DeChristopher testified that Persico later told him that this access to the telephone enabled Persico to maintain his position as Boss of the Family while incarcerated. In August, 1982, McIntosh met at Montemarano's social club in Brooklyn with Colombo Family colleagues

Montemarano and Gennaro Langella (GX 349G–H). On September 14, 1982, McIntosh met with Langella, Montemarano, and Scarpati at the Casa Storta Restaurant where Colombo Family members frequently congregated. Further, there was evidence that on September 27, 1982, McIntosh was observed meeting with Langella for an hour in Langella's car (Tr. 11, 596–98). In December, 1982, after his guilty plea in the Eastern District, McIntosh was intercepted in telephone conversations with Langella. In one of these, they arguably discussed Colombo Family business (GX 1019). On December 20, 1982, Langella and Scarpati were intercepted in a coded telephone conversation discussing a meeting Scarpati was planning and whether McIntosh, an associate but not a "made guy," was permitted to attend (GX 1008). He was.

Finally, Fred DeChristopher testified that Carmine Persico told him that McIntosh remained a member of the enterprise, and that after McIntosh went to prison on the Eastern District conviction, Persico authorized weekly payments to McIntosh's wife of $500, for as long as McIntosh was incarcerated (Tr. 13, 719–20). The money was paid and accounted for by Scarpati and Alphonse Persico (Tr. 13, 720).

The proof set forth above satisfies the condition imposed by this Court in its July 23, 1985 ruling. The Russo and McIntosh double jeopardy motions are denied.

### B. Statute of Limitations

Russo and McIntosh raise basically the same statute of limitations objections which McIntosh raised pre-trial and during trial. The defendants urge that *United States v. Srulowitz*, 785 F.2d 382 (2d Cir. 1986) somehow should change the result. But *Srulowitz* was a single defendant case and, as the Government maintains, does not apply in a multi-defendant case where the statute of limitations runs from the last date of alleged racketeering activity. For the reasons set forth in *United States v. Persico*, 621 F.Supp. 842, 872–73 (S.D.N.Y. 1985), this portion of the motion is denied.

## C. Alleged Failure to Prove Pattern of Racketeering

This portion of the motions is put forth by the defense for the first time.

Russo and McIntosh assert that the predicate acts of racketeering arising from the lengthy scheme to bribe the IRS Agent for which they were convicted, as a matter of law, cannot constitute a pattern of racketeering activity. This claim is addressed to the face of the Indictment. The Government urges that it is waived by the defense failure to raise it before trial. Fed.R. Crim.P. 12(b)(2). The Government is no doubt correct.

However, it must be noted that the racketeering acts in issue do constitute a pattern of racketeering activity. The Court will not adopt the defense suggestion that the two-and-a-half year series of payments and offers of bribes to Agent Annicharico of which the defendants stand convicted is one crime. Such a contention is contrary to case law. Even multiple payments pursuant to one extortionate demand constitutes a pattern of racketeering activity. *United States v. Tolub*, 309 F.2d 286, 289 (2d Cir.1962); *United States v. Brooklier*, 685 F.2d 1208, 1217 (9th Cir.1982), *cert. denied*, 459 U.S. 1206, 103 S.Ct. 1194, 75 L.Ed.2d 439 (1983). Certainly, the several bribes and bribe offers here, which stretch over a period of time, involving various different members and non-members of the enterprise, seeking to accomplish numerous illicit goals for the enterprise, including inmate prison transfers, stopping federal tax prosecutions, preventing a state perjury prosecution, and attempting to get a high Organized Crime figure out of prison altogether—set forth a pattern of racketeering activity envisioned by the statute.

This portion of the motion is also denied.

### Conclusion

Jury selection in this case commenced on October 15, 1985. The Court charged the jury on June 2, 1986. The jury returned its verdict on June 13, 1986. A review of the record of the twelve straight days of jury deliberation, during which the jury was sequestered, irrefutably demonstrates that the jury carefully examined the evidence before returning its discriminating and thoughtful verdict. As the Government argues "defendants were given every conceivable opportunity to dispute the Government's evidence and to defend themselves" (p. 33 Government Memo of Law, September 15, 1986).

There has been nothing submitted by the defense in these post-trial motions which warrants overturning this Court's earlier rulings or the jury's verdict.

All motions are denied.

IT IS SO ORDERED.